IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| REPUBLICATION NATIONAL COMMITTEE, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS MAHONEY III, et al.<br><br>Defendants. | Case No.: 4:24-CV-00248- |

**BRIEF OF DEKALB DEFENDANTS IN OPPOSITION
TO PLAINTIFFS' VERIFIED EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION AND
TEMPORARY RESTRAINING ORDER**

**NOW COME** Vasu Abhiraman, Nancy Jester, Anthony Lewis, Susan Motter, and Karli Swift, in their official capacities as members of the DeKalb County Board of Voter Registration and Elections (the "**DeKalb Defendants**") and file this *Brief of DeKalb Defendants in Opposition to Plaintiffs' Verified Motion for Preliminary Injunction and Temporary Restraining Order* (the "**Emergency Motion**") showing this Honorable Court the following:

- 1 -

## INTRODUCTION

The DeKalb County Voter Registration and Elections Office[1] ("**DeKalb County**") is following Georgia law. Any assertions to the contrary are simply false and a misrepresentation of the laws of the State of Georgia. Under Georgia law a voter may "personally deliver" their ballot to the board of elections office until 7:00pm on Election Day. Plaintiffs either fail to grasp the differences between advance voting, election day voting, and absentee voting or are deliberately misrepresenting how voting works in this state. DeKalb County is not treating similarly situated voters differently and is not violating the equal protection rights of any voter. In short, Plaintiffs' claims are frivolous and having already been rejected by the Superior Court of Fulton County[2], they now seek the protection of this Court in an effort to find a more favorable ruling.

---

[1] The DeKalb County Voter Registration and Elections Office is under the direction of its Executive Director, Ms. Keisha Smith and the DeKalb County Board of Registration and Elections (the "DeKalb BRE"). The members of the DeKalb BRE, Vasu Abhiraman, Nancy Jester, Anthony Lewis, Susan Motter, and Karli Swift, in their official capacities as member of DeKalb BRE are the DeKalb Defendants.

[2] While DeKalb Defendants have not been able to locate a written order from the Fulton County Superior Court, a video of the full hearing before the Honorable Kevin Farmer in which Judge Farmer denied the requested relief is posted publicly posted on Judge Farmer's YouTube channel. The hearing can be accessed at the following link: https://www.youtube.com/live/wGqGpNsqODg?si=cw2FQ2HV9HD2R33_.

The DeKalb Defendants' interest in the Emergency Motion is to ensure that every eligible DeKalb County voter can exercise their right to vote. This includes allowing electors to personally deliver their absentee ballots until 7:00 p.m. on Election Day, November 5, 2024. Plaintiffs filed the Emergency Motion on November 3, 2024, two days before Election Day, asking the Court to prohibit Defendants from continuing to accept those absentee ballots delivered in person after Friday, November 1, 2024, the date they describe as the "legal deadline for the end of advance voting in Georgia," and to further require that Defendant segregate (and presumably not count) the same.

Plaintiffs' argument is unfounded and lacks any statutory authority. Although Plaintiffs claim to travel under O.C.G.A. § 21-2-385(d)(1)(B) and center their statutory and constitutional arguments on that statute, they disregard O.C.G.A. § 21-2-385(a) which, explicitly, contradicts Plaintiffs' legal theory and requires DeKalb County to accept hand-delivered absentee ballots after advance voting has concluded. There is no likelihood, substantial or otherwise, that Plaintiffs will be successful on the merits of their claim, and the Court should reject Plaintiffs' claims and deny all relief sought in the Emergency Motion.

## STATEMENT OF FACTS

DeKalb County has posted on its website that, "DeKalb County Voters can hand-deliver their absentee ballots to the VRE Office located at 4380 Memorial Drive, Suite 300, Decatur, GA 30032 from 8:00 AM – 3:00 PM on Sat and Sun and again on Monday from 8:00 AM – 5:00 PM and Tuesday from 7:00 AM – 7:00 PM[]" *Absentee Information*, DeKalb County Georgia, Absentee Voting, https://www.dekalbcountyga.gov/voter-registration-elections/absentee-information. On Saturday, November 2, 2024, DeKalb County received 78 hand-delivered absentee ballots. Declaration of Keisha Smith ("Smith Dec.") at ¶ 14. An additional 101 hand-delivered absentee ballots were received on Sunday, November 3, 2024. Smith Dec. at ¶ 15. An additional 366 ballots were hand delivered on Monday, November 4, 2024. Smith Dec. at ¶ 16.

While it is true that DeKalb County is required by law to discontinue *advance voting* when the last voter in line at 7:00 p.m. on the Friday prior to a general election votes, see O.C.G.A. § 21-2-385(d)(1), votes by *absentee ballot* are not advance voting and are authorized by separate statute. *Compare* O.C.G.A. § 21-2-385(a) with O.C.G.A. § 21-2-

385(d).  There is no doubt, DeKalb County ended advance voting after the last person in line at 7:00pm on Friday, November 1, 2024 voted.  Smith Dec. at ¶¶ 7-10.  Eligible electors are being permitted to hand-deliver their voted absentee ballots pursuant to O.C.G.A. § 21-2-385(a) which provides in relevant part that "[a]t any time after receiving an official absentee ballot, but before the day of the primary or election … the elector shall vote his or her absentee ballot … and the elector shall then personally mail *or personally deliver same* to the board of registrars or absentee ballot clerk …." (emphasis added).  Smith Dec. at ¶ 12.

Absentee ballots may be accepted (by hand delivery or mail service) up until 7:00 P.M. on election day and "[a]ll absentee ballots returned to the board or absentee ballot clerk *after the closing of the polls* on the day of the primary or election shall be safely kept unopened … for the period of time required for the preservation of ballots … and shall then, without being opened, be destroyed …." O.C.G.A. § 21-2-386(a)(1)(F) (emphasis added).

### ARGUMENT AND CITATION OF AUTHORITY

A preliminary injunction is appropriate where the movant demonstrates that: (a) there is a substantial likelihood of success on the

merits; (b) it is necessary to prevent irreparable injury; (c) the threatened injury outweighs harm that the preliminary injunction would cause to the non-movant; and (d) the preliminary injunction would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (citing *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985)); *see also* Fed. R. Civ. P. 65.  Plaintiffs have not shown that they are likely to succeed on their Equal Protection and Election Clause claims and thus the Emergency Motion should be denied.

### A. Plaintiffs Do Not Have Standing To Bring Their Equal Protection Or Election Clause Claims.

Standing is a threshold jurisdictional inquiry since the elements of standing are "an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To show standing, the parties invoking the federal court's jurisdiction must demonstrate three elements: (1) they have suffered an injury in fact that is concrete and particularized and actual or imminent; (2) the injury is fairly traceable to the challenged conduct of the defendant; and (3) a favorable decision is likely to redress the injury. *Id.* at 560-61.  Here, Plaintiffs do not have

4854-6841-7014, v. 4

standing to bring their Equal Protection Clause or Election Clause claims.

### 1. Equal Protection Clause

The Equal Protection Clause of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "[n]o State shall deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, ¶ 1. The Supreme Court has identified two theories of voting harms prohibited by the Fourteenth Amendment. "[F]irst, the Court has identified a harm caused by debasement or dilution of the weight of a citizen's vote" and second "where the state, having once granted the right to vote on equal terms, through later arbitrary and disparate treatment, values one person's vote over that of another." *Moore v. Circosta*, 494 F. Supp. 3d 289, 310 (M.D.N.C. 2020) (citing *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) and *Bush v. Gore*, 532 U.S. 98, 104 (2000), respectively). To establish an Equal Protection Clause violation in the voting context, the plaintiffs must "allege facts showing disadvantage to *themselves as individuals* [to] have standing to sue." Baker *v. Carr*, 369 U.S. 186, 206 (1962) (emphasis added).

Although the Emergency Motion contains allegations of disparate treatment, Plaintiffs do not have standing to bring such a claim because they are not *voters* who themselves have been harmed. The crux of Plaintiffs' Equal Protection claim is that DeKalb County's decision to accept absentee ballots over the weekend, as permitted under Georgia law, when other Georgia counties remained closed resulted in "disparate voting opportunities for *Georgia voters* based solely on their county of residence[3]." This type of generalized grievance cannot as a matter of law confer standing. *See Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (holding that the plaintiff who alleged an interest in ensuring that only lawful ballots in an election are counted had asserted a generalized grievance and not an injury in fact.").

**2. Election Clause**

Similarly, Plaintiffs do not have standing to bring their Elections Clause claims. The Elections Clause vests authority to prescribe "The Times, Places, and Manner of holding Elections for Senators and Representatives … in each State by the Legislature thereof …." U.S.

---

[3] While Plaintiffs are the "masters of their complaint," if Plaintiffs were really concerned about this issue, it seems the better solution would have been to sue all 159 election boards to ensure a uniform result. Instead, Plaintiffs "cherry picked" certain counties all but one of which are not located in this district.

Const. Art. I, § 4, Cl. 1. The Supreme Court has interpreted the words "the Legislature thereof," to mean the lawmaking processes of a state. *Ariz. State Legislature v. Ariz. Ind. Redistricting Comm'n*, 576 U.S. 787, 817-18 (2015). "The Elections Clause, therefore, affirmatively grants rights to state legislatures …." *Corman v. Torres*, 287 F. Supp. 3d 558, 573 (M.D. Pa. 2018) (holding Plaintiffs did not have standing to seek a preliminary injunction under the Election Clause because "as far as we can tell on this record, the Election Clause claims asserted in the verified complaint belong, if they belong to anyone, only to the Pennsylvania General Assembly."). And while legislative plaintiffs may bring Election Clause claims on behalf of the legislature itself, such claims must allege some extra, particularized harm to the legislative plaintiffs themselves. Indeed, the Supreme Court has found a lack of standing where legislative plaintiffs "have alleged no injury to themselves as individuals"; where "the institutional injury they allege is wholly abstract and widely disperse"; and where the plaintiffs "have not been authorized to represent their respective Houses of Congress in this action." *Moore*, 494 F. Supp. 3d at 323 (citing *Raines v. Byrd*, 521 U.S. 811, 829 (1997)).

Plaintiffs do not represent the Georgia General Assembly and thus cannot bring an Election Clause claim. And even if Plaintiffs had such authority, the "injury" they claim in the Emergency Motion with respect to their Election Clause claim is that Defendants did not follow the Election Clause when they accepted personally delivered absentee ballots (as permitted by Georgia law) after Georgia's deadline for advance voting. Such allegation, alone, is insufficient to establish Article III standing. *See Lance v. Coffman*, 549 U.S. 437, 442 (2007) (finding plaintiff lacked standing because "the only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed.").

Plaintiffs will not succeed on their claims due to lack of standing, and therefore injunctive relief should be denied.

### B. **Plaintiffs' Claims are Barred by the Doctrine of Issue Preclusion (Collateral Estoppel).**

An issue is precluded when "(1) the issue in the current and prior actions is identical; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) the party against whom the doctrine is invoked had a full and fair opportunity to litigate the issue in the prior

proceeding." *Wood v. Sellers*, 2022 U.S. App. LEXIS 18321, at *5 (11th Cir. 2022).

Just three days ago, the Fulton County Superior Court considered and rejected the same flawed interpretation of state law that Plaintiffs now advance before this Court. Specifically, plaintiff Georgia Republican Party, Inc. and the Fulton County Republican Party, Inc. sued defendant Fulton County and alleged that it planned to permit voters to return absentee ballots in person to the county's Department of Registration and Elections on November 2 and 3, 2024 in violation of O.C.G.A. §§ 21-2-382 and 385(d)(1)(B) (the "Fulton County Litigation") (Doc. No. 25-1). The plaintiffs in the Fulton County Litigation also sought a preliminary injunction against Fulton County based on acceptance of absentee ballots on those days. The Fulton County Superior Court denied the requested relief. Accordingly, the issues in the two lawsuits are identical and the Plaintiffs are precluded from raising that issue before this Court.

## C. Relief Is Barred By The *Purcell* Principle.

The Supreme Court has repeatedly held that "lower federal courts should ordinarily not alter the election rules on the eve of an election," *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424

(2020). In *Purcell v. Gonzalez*, 549 U.S. 1 (2006), the Supreme Court instructed that federal courts addressing election issues close to the time of the election should issue injunctive relief as narrowly as possible. Often called the "*Purcell* principle," the rule is based on the fact that "court orders affecting elections … result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5; *see also Texas All. for Retired Americans v. Hughes*, 976 F.3d 564, 567 (5th Cir. 2020) ("The principle . . . is clear: court changes of election laws close in time to the election are strongly disfavored.").

Here, Plaintiffs filed this lawsuit two days before a general election seeking to upend established Georgia statutes that DeKalb County and its voters have already relied upon. This Court should follow *Purcell* and decline to enter the requested last-minute injunctive relief.

### D. Plaintiffs Are Otherwise Unlikely To Succeed On The Merits Of Their Claims.

Plaintiffs' claims are unlikely to succeed because they conflate advance voting and absentee voting. The DeKalb Defendants readily acknowledge that Georgia law requires that "the period of advance voting … shall end on the Friday immediately prior to each primary, election, or runoff." O.C.G.A. § 21-2-385(d)(1)(B). For this election cycle that date

- 12 -

fell on November 1, 2024. However, O.C.G.A. § 21-2-385(a) allows electors to "personally mail or personally deliver" absentee ballots to the board of registrars which is permitted "to establish additional registrar's offices or places of registration for the purpose of receiving absentee ballots[.]" DeKalb County's decision to open its office to eligible electors to "personally deliver" ballots is lawful under Georgia law and does not run afoul of the Equal Protection Clause or the Elections Clause of the United States Constitution.

### 1. Plaintiffs Cannot Succeed on their Equal Protection Clause Claim.

As indicated above, the Equal Protection Clause of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "No State shall deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, ¶ 1. Specifically, and in the context of this case, the Equal Protection Clause guarantees that "qualified voters have the right to vote and to have their vote counted equally with other individual qualified voters in the same electoral unit." *Jackson v. Mich. Sec'y of State*, 2024 U.S. Dist. LEXIS 190194, at *9 (E.D. Mich. Oct. 18, 2024) (citing *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1087 (9th Cir. 2024)). Indeed,

the Equal Protection Clause only becomes applicable if "'a state either classified voters in disparate ways … or places restrictions on the right to vote." *Wood v. Raffensperger*, 501 F. Supp. 3d 1310, 1325 (N.D. Ga. 2020) (citing *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012)); *see also Tully v. Okeson*, 877 F.3d 608, 615 (7th Cir. 2020) (finding no equal protection issue where the state required some voters to cast their ballots in person during the COVID-19 pandemic because the "absentee-voting scheme does not impact Plaintiff' fundamental right to vote …."). As *Tully* makes clear, not all disparate treatment rises to the level of an Equal Protection violation. A change in election rules that results in disparate treatment only becomes unconstitutional "when [the] rules are [] arbitrary." *Moore*, 494 F. Supp. 3d. at 316 (finding that the State Board of Elections engages in arbitrary behavior "when it acts in ways that contravene the fixed rules or procedures the state legislature has established for voting … creating preferred classes of voters."); *see also Am. Party of Tex. v. White*, 415 U.S. 767, 795 (1974) ("permitting absentee voting by some classes of voters and denying the privilege to other classes … is an arbitrary discrimination in violation of the Equal Protection Clause").

Thus, to succeed on a disparate treatment theory, the movant must be able to show that defendants engaged in arbitrary conduct that effectively caused and/or allowed the vote cast by one individual to count or weigh more than the vote cast by another in the same election unit. *Wood v. Raffensperger*, 2020 U.S. Dist. LEXIS 244731, at *9 (N.D. Ga. 2020). Plaintiffs have not done so here – in fact, DeKalb County's decision to remain open over the weekend to collect absentee ballots was done within Georgia's absentee voting framework, specifically O.C.G.A. §§ 21-2-385(a) and 21-2-386(a)(1)(F), and on the guidance of Georgia's Secretary of State. As the Eleventh Circuit noted in *Black Voters Matter Fund v. Sec'y of State for Ga.*, 11 F. 4th 1227, 1235 (11th Cir. 2021), "Georgia's absentee voting framework is not the type of 'arbitrary discrimination violative of the Equal Protection Clause[.]" Having followed all applicable laws and regulations, DeKalb County's decision to accept absentee ballots over the weekend and on Monday was not arbitrary.

### 2. Plaintiffs Cannot Succeed On Their Election Clause Claims.

Plaintiffs' Election Clause Claim revolves around their misguided belief that DeKalb County contravened Georgia election laws relating to

4854-6841-7014, v. 4

advance voting. As discussed *supra,* DeKalb County was authorized to accept absentee ballots after the conclusion of advance voting by O.C.G.A. §§ 21-2-385(a) and 21-2-386(a)(1)(F), which specifically provide that absentee ballots may be hand-delivered and accepted by the board of registrars up until the close of the polls on Election Day.

### E. **Plaintiffs Will Not Suffer Irreparable Harm.**

The Plaintiffs fail to make a clear showing that they are likely to be irreparably harmed absent preliminary relief. Plaintiffs attempt to meet this burden by pointing to "violations of state law" which are, in fact, not violations at all. Insofar as Defendant did not violate O.C.G.A. § 21-2-385(d)(1)(B), Plaintiffs have failed to show that they have been irreparably harmed.

### F. **The Balance of Equities And Public Interest Weigh Against Granting The Emergency Motion.**

The balance of equities and the public interest strongly disfavor entering injunctive relief. In the middle of a general election, Plaintiffs seek to upend the status quo by preventing DeKalb County from following Georgia election law by accepting, and perhaps counting, hand-delivered absentee ballots. Plaintiffs' proposed relief would disenfranchise voters, including voters who returned ballots on Saturday,

Sunday and Monday in reliance on Georgia law, guidance from the Georgia Secretary of State, the longstanding practice of Georgia counties of accepting hand delivered absentee ballots after the conclusion of advance voting, and an order by the Fulton County Superior Court on Saturday which held that this practice was lawful. Voters disenfranchisement, which is what Plaintiffs' proposed relief would require, is neither equitable nor in the public interest.

## CONCLUSION

Plaintiffs' claims are frivolous and contrary to Georgia law. Instead of accepting the ruling of the Fulton County Superior Court, Plaintiffs decided to "forum shop" by bringing this action in this District seeking a different outcome. Unfortunately for Plaintiffs they have failed to show a violation of Georgia law or any constitutional violation. Plaintiffs have failed to meet the requirements for the issuance of injunctive relief, and accordingly, the Emergency Motion should be denied.

Respectfully submitted this 5th day of November, 2024.

        **SMALL HERRIN, LLP**
        *COUNSEL FOR DEFENDANTS VASU ABHIRAMAN, NANCY JESTER, ANTHONY LEWIS, SUSAN MOTTER, and KARLI SWIFT*

        By:   /s/ Brent W. Herrin
            Brent W. Herrin
            Georgia Bar No. 614753
            Benjamin S. Klehr
            Georgia Bar No.: 487931

100 Galleria Parkway
Suite 350
Atlanta, Georgia  30339
Telephone:  (770) 783-1800
Facsimile:  (770) 857-1665
bherrin@smallherrin.com
bklehr@smallherrin.com

- 18 -

## CERTIFICATE OF SERVICE

I, the undersigned, certify that I am over the age of 18 and on this date, I filed and served a copy of the above *BRIEF OF DEKALB DEFENDANTS IN OPPOSITION TO PLAINTIFFS' VERIFIED EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER* by using the Court's Electronic Case Filing program which sends a notice of the above-listed document and an accompanying link to the document to the parties who have appeared in this case under the Court's Electronic Case Filing program.

This 5th day of November, 2024.

                                        **SMALL HERRIN, LLP**
                                        *COUNSEL FOR DEFENDANTS VASU ABHIRAMAN, NANCY JESTER, ANTHONY LEWIS, SUSAN MOTTER, and KARLI SWIFT*

                              By:   /s/ Brent W. Herrin
                                     Brent W. Herrin
                                     Georgia Bar No. 614753

100 Galleria Parkway
Suite 350
Atlanta, Georgia  30339
Telephone:  (770) 783-1800
Facsimile:  (770) 857-1665
bherrin@smallherrin.com