# EXHIBIT A

# U.S. DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE and GEORGIA REPUBLICAN PARTY, INC., <br><br> Plaintiffs, <br><br> *v*. <br><br> THOMAS MAHONEY III, et al., <br><br> Defendants, | No. 4:24-CV-00248-RSB-CLR |

**BRIEF OF THE GEORGIA STATE CONFERENCE OF THE NAACP, GEORGIA COALITION FOR THE PEOPLE'S AGENDA, AND LEAGUE OF WOMEN VOTERS OF GEORGIA AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' REPONSES TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

STATEMENT OF INTEREST .................................................................................2

ARGUMENT .............................................................................................................4

    I.    PLAINTIFFS' STATE LAW CLAIM HAS NO MERIT. .............................4

    II.   PLAINTIFFS' CLAIMS UNDER THE ELECTIONS CLAUSE AND THE EQUAL PROTECTION CLAUSE HAVE NO MERIT. ................................7

    III.  PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION; NOR IS THE ELEVENTH-HOUR RELIEF SOUGHT BY PLAINTIFFS IN THE PUBLIC INTEREST. ..................................................9

CONCLUSION ........................................................................................................11

CERTIFICATE OF COMPLIANCE .......................................................................13

CERTIFICATE OF SERVICE ................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Bush v. Gore*,
  531 U.S. 98 (2000) .................................................................................... 11, 12

*K Mart Corp v. Cartier Inc.*,
  486 U.S. 281 (1988) ........................................................................................ 9

*Merrill v. Milligan*,
  142 S. Ct. 879 (2022) .................................................................................... 12

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
  589 U.S. 423 (2020) ...................................................................................... 14

*Reynolds v. Sims*,
  377 U.S. 533 (1964) ...................................................................................... 13

 *Seigel v. LePore*,
  234 F.3d 1163 (11th Cir. 2000) .................................................................... 13

**Statutes**

O.C.G.A. § 21-2-385 ........................................................................................... 9

O.C.G.A. § 21-2-381 ........................................................................................... 9

O.C.G.A. § 21-2-382 ........................................................................................ 8, 9

O.C.G.A. § 21-2-384 ........................................................................................... 9

O.C.G.A. § 21-2-385 ........................................................................................... 8

O.C.G.A. § 21-2-403 ........................................................................................ 8, 9

**Other Authorities**

About Us, League of Women Voters of Georgia,
  https://lwvga.clubexpress.com/content.aspx?page_id=22&club_id=996555&mod

ii

ule_id=506655#edu ..........................................................................................6

About Us, The Peoples' Agenda, https://thepeoplesagenda.org/about-us/ ...............5

Hearing, November 2, 2024, *Fulton County Republican Party v. Fulton County*,
   https://www.youtube.com/watch?v=wGqGpNsqODg .........................................11

Mission of the Georgia State Conference of the NAACP,
   https://www.georgianaacp.org/mission ...............................................................5

# INTRODUCTION

The Georgia State Conference of the NAACP (Georgia NAACP), Georgia Coalition for the People's Agenda, Inc. (GCPA), League of Women Voters of Georgia (LWVGA) file this amicus brief to emphasize the following points.

First, Plaintiffs have not demonstrated a likelihood of success on the merits to support the issuance of the injunction they seek. Georgia's statutory scheme is unambiguous. Contrary to Plaintiffs' view, it carefully distinguishes between "advance" voting, which is subject to a November 1 deadline, and "absentee" voting, which is not. That Defendants have therefore acted precisely in accord with the Time, Places and Manner of Georgia law, as enacted by the General Assembly, is fatal to Plaintiffs' Elections Clause claim. And Plaintiffs' attempt to analogize this case to the unique circumstances presented in *Bush v. Gore*, so as to support an Equal Protection claim, is misguided.

Second, Plaintiffs have not established that they would suffer any immediate harm where Defendants simply followed state law in exercising their discretion to open additional sites where voters would be able to drop off their absentee ballots in person before Election Day. Nor have Plaintiffs shown that their drastic and unsupported election-eve relief would be in the public interest. The relief sought by Plaintiffs, if granted by this Court, would result in the likely loss of the right to vote by the scores of voters who returned their absentee ballots over the past weekend,

secure in their belief that the counties were following the law.

Accordingly, amici seek leave of the Court to file the attached brief that underscores the weaknesses of Plaintiffs' eleventh-hour request to alter state law procedures for counting validly cast ballots. For all the reasons in this brief and in the briefs filed by Defendants, the Court should not grant the relief sought by Plaintiffs.

## STATEMENT OF INTEREST

Amici are organizations dedicated to increasing civic engagement among their members and eliminating barriers to voting, particularly for Black voters, other voters of color, and voters in traditionally disenfranchised communities. On their own and on behalf of their members, they have a strong interest in ensuring that all lawfully cast votes are counted and certified as required by state law.

Among its key objectives, Georgia NAACP seeks to ensure "the political . . . equality of all citizens" and "remove all barriers of racial discrimination through democratic processes."[1] GCPA's primary mission includes "voting rights protection [and] elimination of barriers to the ballot box," particularly among underrepresented voters.[2] LWVGA is a nonpartisan, grassroots membership organization that works

---

[1] The Mission of the Georgia State Conference of the NAACP. https://www.georgianaacp.org/mission (last visited Nov. 5, 2024).
[2] About Us, The Peoples' Agenda, https://thepeoplesagenda.org/about-us/ (last visited Nov. 5, 2024).

2

to empower every person to participate fully in our democracy, including through helping voters register and get-out-the-vote.[3] In advance of the General Election, amici have educated their members and constituents regarding mail-in voting, including by informing them that they may hand deliver absentee ballots in person to their respective county boards of election up until Election Day.

The county boards of registration and elections named as Defendants—for counties Chatham, Fulton, Dekalb, Cobb, Gwinnett, Clayton, and Athens-Clarke—include some of the largest counties in terms of population size and the most racially and ethnically diverse in the State of Georgia. Amici have members who reside in all of these counties. The four largest, Fulton, Gwinnett, Cobb, and Dekalb, have a significant percentage of Black voters, many of whom are members of amici organizations.

And many of these members voted absentee and several returned their mail-in ballots between November 2nd and 4th, the time period during which their respective counties accepted hand delivered absentee ballots. The drastic relief Plaintiffs seek—sequestration of mail-in ballots that were hand delivered to these county boards during the three days that the offices of the boards were kept open and

---

[3] About Us, League of Women Voters of Georgia, https://lwvga.clubexpress.com/content.aspx?page_id=22&club_id=996555&module_id=506655#edu (last visited Nov. 5, 2024).

possible disqualification of these lawful ballots—would, if granted, disenfranchise amici's members who would have no recourse if their hand delivered ballots were rejected at this late stage. They would simply lose their right to vote.

## ARGUMENT

### I. PLAINTIFFS' STATE LAW CLAIM HAS NO MERIT.

The crux of Plaintiffs' lawsuit rests on a pure question of statutory interpretation, namely, whether state law authorized counties to accept hand delivered absentee ballots in person at their respective county boards of registration and election on November 2, 3, and 4. Compl. ¶ 33; Pls.' Br. 3. Plaintiffs say state law prohibits county boards from accepting hand delivered absentee ballots after the deadline for Advance Voting (November 1). Pls.' Br. 3. They go on, that all absentee ballots returned during this period were therefore unlawfully cast and must be kept apart from all other absentee ballots and then rejected because counting these "ineligible" ballots would dilute the lawfully cast votes in other counties. Pls.' Br. 7–8.

Plaintiffs' entire argument is based on the erroneous assumption that "advance voting" and the hand-delivery of "absentee ballots" are subject to the same statutory deadline. The plain text of Georgia's statutes points in the opposite direction. Nowhere in the controlling statutes does the General Assembly provide that absentee ballots and Advance Voting are subject to the same time restraints. Rather, while

4

Advance Voting must be concluded by the Friday before Election Day (November 1), O.C.G.A. § 21-2-385 (d)(1)(B), the statutes do not provide any similar deadline for hand-delivered absentee ballots. Instead, counties may accept hand delivered absentee ballots at any time up until 7 p.m. on Election Day at a government building or a polling site. O.C.G.A. § 21-2-403(a).

That the General Assembly carefully distinguished "advance voting" from voting by "absentee ballot" is clear. For example, the Georgia Election Code provides as follows,

> Any other provisions of this chapter to the contrary notwithstanding, the board of registrars may establish additional registrar's offices or places of registration for the purpose of receiving absentee ballots under Code Section 21-2-381 and for the purpose of advance voting under Code Section 21-2-385, provided that any such site is a building that is a branch of the county courthouse, a courthouse annex, a government service center providing general government services, another government building generally accessible to the public, or a building that is used as an election day polling place, notwithstanding that such building is not a government building.

O.C.G.A. § 21-2-382(a). The phrasing of this provision is significant. It does not include voting by "absentee ballots" within the ambit of "advance voting." To the contrary, it expressly distinguishes between those two methods of voting by carefully providing that counties may establish such offices for these two distinct purposes: (1) receiving absentee ballots under Code Section 21-2-381 *and* (2) advance voting under Code Section 21-2-385. By distinguishing these two purposes, the provision makes it crystal clear that absentee voting and advance voting are two

5

separate things.

If more is needed, Georgia's overall statutory scheme corroborates the view that absentee voting and advance voting deadlines are different. *See K Mart Corp v. Cartier Inc.*, 486 U.S. 281, 291 (1988) (noting when ascertaining the meaning of a statute, courts must look to the language at issue as well as the statute as a whole). For one, absentee voting procedures versus advance voting procedures appear in different provisions within the Election Code. O.C.G.A. § 21-2-381, § 21-2-384, and § 21-2-385(a) govern for absentee voting. Election officials must mail absentee voters their ballot "no less than 25 days" before the election. O.C.G.A. § 21-2-384. Absentee voters, after receiving their ballots, may cast their ballot "at any time" before the election by mailing it or personally delivering it. O.C.G.A. § 21-2-385(a). On Election Day, the polls close at 7 p.m. eastern time and therefore, all ballots including absentee ballots must be received by that deadline. O.C.G.A. § 21-2-403(a).

The advance voting process expressly allows voters to vote *in person* at designated advanced voting sites before Election Day. O.C.G.A. § 21-2-385(d). Advance voting begins "on the fourth Monday immediately prior to each primary or election" and takes place on weekdays and the second and third Saturday between 9 a.m. and 5 p.m. *Id.* While these hours may be extended by county boards, the statute unambiguously says that advance voting "shall end" on the Friday preceding the

6

election, *i.e.*, November 1, 2024. *Id.*

Taken together, the plain text of the statutes demonstrates that absentee voters may return their ballots, in person or by mail, at any time before 7 p.m. on Election Day. At the same time, the statutes make clear that the last day for early in person voting, also known as advance voting in Georgia, was November 1. Plaintiffs cannot point to anywhere in the statutory scheme that indicates that the November 1 deadline applies to the return of hand delivered absentee ballots. Nor can Plaintiffs point to any section in the Election Code that requires counties which use their discretion to establish additional offices for the purpose of receiving absentee ballots to sequester those ballots if they are hand delivered after the deadline for advance voting.

Plaintiffs appear to concoct these rules out of thin air, rewriting Georgia's statutes to suit their own ends. Having failed to establish a likelihood of success on the merits of their state law claim, the Court should reject Plaintiffs' interpretation of the state statute in favor of the plain meaning.

## II.  PLAINTIFFS' CLAIMS UNDER THE ELECTIONS CLAUSE AND THE EQUAL PROTECTION CLAUSE HAVE NO MERIT.

Plaintiffs' federal constitutional claims rest on the same, misguided premise that the counties acted in violation of state statutes in accepting hand delivered

ballots after the November 1 early in-person advance voting deadline.[4] These claims can be easily dispatched.

First, Plaintiffs' claim that Defendants violated the Times, Places and Manner provision of the Elections Clause of the U.S. Constitution by failing to follow state statutes rises and falls with the rejection of Plaintiffs' statutory argument. As explained above, Defendants' actions are in accord with Georgia statutory law, so the Elections Clause claim fails. *See infra*, Part I.

Second, relying on *Bush v. Gore*, 531 U.S. 98 (2000), Plaintiffs say that Defendants' actions result in arbitrary treatment of voters based on where they live. Pls.' Br. 4. In other words, their argument is that voters residing in other counties that did not establish offices to accept hand delivered absentee ballots from November 2 thru November 4 are disadvantaged by the voters who were able to return their absentee ballots in these counties. But *Bush v. Gore* does not stand for that proposition. Rather, it was a case presenting a myriad of differences from election official to election official and from county to county in the way election officials were evaluating voter intent. For that reason, the Court cautioned that its "consideration is limited to the present circumstances, for the problem of equal

---

[4] A judge in Fulton County rejected a substantially similar suit brought by plaintiffs in state court that requested much the same relief against Fulton as plaintiffs do here against multiple counties. Hearing, November 2, 2024, *Fulton County Republican Party v. Fulton County*, https://www.youtube.com/watch?v=wGqGpNsqODg (last visited Nov. 5. 2024).

protection in election processes generally presents many complexities." *Id.* at 109. And the Court specifically advised that the question before it was "not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections." *Id.* Here, unlike in *Bush v. Gore*, election officials did not follow arbitrary procedures in the counting of ballots. Rather, they followed state statute by establishing additional locations for voters to return their absentee ballots all within the deadline to return such ballots (by 7 p.m. on Election Day).

Plaintiffs have no likelihood of success on the merits of their constitutional claims.

### III. PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION; NOR IS THE ELEVENTH-HOUR RELIEF SOUGHT BY PLAINTIFFS IN THE PUBLIC INTEREST.

The expedited declaratory and temporary, preliminary, and permanent injunctive relief portends extreme disruption to Georgia's election system. Plaintiffs seeking this kind of extraordinary remedy from a federal court must have an entitlement that is "entirely clearcut." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). Federal courts also must take into account the burden on voters, candidates, and administrators. *See id.* at 881–82 (Kavanaugh, J., concurring) (plaintiffs must establish that requested election-eve "changes are feasible without significant cost, confusion, or hardship"). Further, in the Eleventh Circuit a preliminary injunction is "an extraordinary and drastic remedy not to be

9

granted unless the movant clearly established the burden of persuasion." *Seigel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal citations omitted). Here, Plaintiffs have not met this high bar.

For starters, Plaintiffs' entitlement to relief is far from "clearcut." In fact, state law authorizes the board of registrars to establish additional registrar's offices for the purpose of receiving absentee ballots. At the same time, the statute further provides that an absentee voter may "personally deliver" their absentee ballots "at any time" before the election. Thus, it appears plainly clearcut that Defendants can accept personally delivered absentee ballots between November 1 and November 5.

In addition, Plaintiffs' claimed harm is non-existent. As discussed above, contrary to Plaintiffs' allegations, Defendants did not extend advance voting past the statutory deadline. Rather, they simply continued to allow absentee voting up until Election Day as Georgia law clearly permits both in Defendant counties and every other Georgia county. This does not amount to any harm to the RNC's members who live in counties that chose not to exercise the discretion afforded to them under state law.

In contrast to Plaintiffs' hypothetical "disadvantage" harm, the harm that an injunction would cause is very real. First, it would burden the sacrosanct and fundamental right to vote. *See Reynolds v. Sims*, 377 U.S. 533, 562 (1964). Absentee voters in Georgia who delivered their ballots to election officials prior to election

day have lawfully cast their ballots. Yet, if Plaintiffs were granted the relief they seek, these voters' lawfully cast ballots would be invalidated based on an ex post facto and incorrect application of state law. Amici's members who hand delivered their absentee ballots during this time stand to be disenfranchised through no fault of their own.

Second, an injunction would also cause substantial confusion particularly as amici's members and constituents would not know whether their ballots were counted. Absentee voting and advance voting are subject to different requirements under Georgia law, and if this Court were to imply that the advance voting deadline should retroactively apply to absentee voting, then voters may also be confused about whether they should try and vote again on Election Day. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020).

Accordingly, because Plaintiffs have not shown that they will suffer irreparable harm absent an injunction and because granting an injunction is not in the public interest as it would risk depriving voters of their fundamental rights and sow mass confusion in the midst of an election, Plaintiffs' motion for an injunction should be denied.

## CONCLUSION

For all the reasons in this brief and in the briefs filed by Defendants, the relief sought by Plaintiffs is impermissible.

11

Dated: November 5, 2024

Respectfully submitted,

*/s/ Gerald Weber*
Gerald Weber (GA Bar No. 744878)
**Law Offices of Gerry Weber, LLC**
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: 404.522.0507
Email: wgerryweber@gmail.com

Ezra D. Rosenberg*
Julie M. Houk*
Pooja Chaudhuri*
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

*pro hac vice forthcoming

*Attorneys for amici curiae*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using the font type of Times New Roman and a point size of 14.

Dated: November 5, 2024.

*/s/ Gerald Weber*

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2024, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

Dated: November 5, 2024

*/s/ Gerald Weber*